# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |
|---|---|
| C-CATION TECHNOLOGIES, LLC,<br><br>        *Plaintiff*,<br>    v.<br><br>TIME WARNER CABLE, INC., ET AL.<br><br>        *Defendants*. | Case No. 2:14-CV-59-JRG-RSP |

# C-CATION TECHNOLOGIES, LLC'S
# REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

I.      INTRODUCTION ............................................................................................................... 1

II.     ARGUMENT ...................................................................................................................... 1

        A.      Preamble Terms ("a shared transmission means for signalling data and user information" and "user information") ................................................................... 1

        B.      "Signalling Data Channel(s)" (claims 1, 3, and 4) .................................................. 3

        C.      Channel Assignment .............................................................................................. 4

              "establishing communications between said central controller and said plurality of remote terminals" (claim 1, step (a)) ........................................................ 4

        D.      Monitoring, Determining Whether to Reassign, and Reassignment Steps Are Not Indefinite ................................................................................................................. 5

            1.      "monitoring the status of a plurality of the signalling data channels in use . . . for the usability of said signalling data channels" / "the usability of said signalling data channels" (claim 1, step (b)) ............................................... 5

            2.      "determining whether one of said plurality of remote terminals needs to be reassigned" / "needs to be reassigned" (claim 1(c)) ................................... 7

            3.      "determining whether a different and suitable signalling data channel is available" (claim 1, step (d)) / "is available" (claim 1, step (d)) / "reassigning by said central controller said remote terminal to a different and suitable signalling data channel" (claim 1, step (e)) ........................... 8

            4.      "said predetermined signalling data channel" (claim 1, step (c)) / "said predetermined channel" (claim 1, step (d)) .............................................. 9

        E.      Order of Claim Steps (claim 1) ............................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Abstrax, Inc. v. Hewlett-Packard Co.*,
　　No. 2:14-CV-158-JRG,
　　2015 U.S. Dist. LEXIS 3384 (E.D. Tex. Jan 12, 2015) .................................................. 5

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
　　234 F.3d 14 (Fed. Cir. 2000) ........................................................................................ 2

*Cioffi v. Google Inc.*,
　　No. 2:13-CV-103-JRG-RSP,
　　2014 U.S. Dist. LEXIS 123760 (E.D. Tex. Aug. 28, 2014) .......................................... 6

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*,
　　257 F.3d 1364 (Fed. Cir. 2001) .................................................................................... 2

*Enpat, Inc. v. Shannon*,
　　No. 6:11-cv-00084-GAP-KRS,
　　2011 WL 6010441 (M.D. Fla. Nov. 30, 2011) ............................................................. 2

*E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213 (Fed. Cir. 2007) ........................................... 3

*FlatWorld Interactives LLC v. Samsung Elecs. Co.*,
　　C.A. No. 12-804-LPS,
　　2014 U.S. Dist. LEXIS 178653 (D. Del. Dec. 31, 2014) ...................................... 7, 8, 9

*Interval Licensing LLC v. AOL, Inc.*,
　　766 F.3d 1364 (Fed. Cir. 2014) .................................................................................... 6

*Invensys Sys. v. Emerson Elec. Co.*,
　　Case No. 6:12-cv-799;
　　2014 WL 3884165 (E.D. Tex. Aug. 6, 2014) ............................................................... 7

*LBS Innovations LLC v. BP Am., LLC*,
　　Nos. 2:11-cv-00407-JRG and 2:12-cv-00735-JRG,
　　2013 WL 3187167 (E.D. Tex. Jun. 19, 2013) .............................................................. 2

*Nautilus, Inc. v. Biosig Instr., Inc.*,
　　134 S. Ct. 2120 (2014) .................................................................................................. 9

*Phillips v. AWH Corp.*,
　　415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................ 5, 8

*ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.*,
　　No. 6:08-CV-325,
　　2009 U.S. Dist. LEXIS 110781 (E.D. Tex. Nov. 30, 2009) .......................................... 6

*RMail Ltd. v. Amazon.com, Inc.*,
  Nos. 2:10-CV-258-JRG,
  2013 WL 968246 (E.D. Tex. Mar. 11, 2013) ................................................................... 2

*Robocast, Inc., v. Microsoft Corp.*,
  21 F. Supp. 3d 320 (D. Del. 2014) ................................................................................. 3

*Schumer v. Lab. Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002) ..................................................................................... 1

*SmartPhone Techs. LLC v. Research in Motion Corp.*,
  Nos. 6:10cv74 LED-JDL and 6:10cv580 LED-JDL,
  2012 U.S. Dist. LEXIS 108369 (E.D. Tex. Aug. 2, 2012) ............................................. 10

*Thomas Swan & Co. v. Finisar Corp.*,
  No. 2:13-cv-00178-JRG,
  2014 WL 2885296 (E.D. Tex. Jun. 25, 2014) ................................................................ 6

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
  212 F.3d 1377 (Fed. Cir. 2000) ..................................................................................... 2

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
  239 F.3d 1225 (Fed. Cir. 2001) ..................................................................................... 3

**Regulations**

MPEP § 2173.05(e) ............................................................................................................. 9

**I.     INTRODUCTION**

Defendants argue that the claim constructions rendered by this Court in *C-Cation v. Comcast* are inapplicable due to changes in the law, new arguments, and because the defendants here were not parties in that case.  In so doing, defendants improperly interpret the applicable case law and fail to follow the basic tenets of claim construction.  Far from being strangers to the '883 patent at issue, two of the defendants here, Cisco and Arris, supplied the systems accused of infringement to the defendants in *C-Cation v. Comast* and indemnified them for the purposes of that litigation.[1]  Further, neither case law, nor defendants' arguments warrant a different result here.  Indeed, what new arguments exist are largely circular, convoluted, and fail to follow the basic tenets of claim construction such as expressed in *Phillips*.

**II.    ARGUMENT**

   **A.     Preamble Terms ("a shared transmission means for signalling data and user information" and "user information")**

Defendants argue that "a shared transmission means for signalling data and user information" and "user information" in claim 1 of the '883 patent are not part of the preamble because the preamble recites the transitional phrase "comprising" twice and therefore these terms, which appear after the first "comprising," are substantive elements.  *See* Def. Br. at 19-20.[2]  But it is well settled that the use of multiple transitional phrases, such as comprising, within a preamble does not mean that the preamble ends after the first transitional phrase.  *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002) (finding preamble did not end with first transitional phrase); *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 17-18,

---

[1]     The public filings of Cisco and Arris with the Securities and Exchange Commission confirm that they indemnified the defendants in *C-Cation v. Comcast*.  *See* Ex. 1, Ex. 2.

[2]     "Def. Br." refers to Defendants' Responsive Brief, filed as Docket Entry 83.

22 (Fed. Cir. 2000) (same); *Enpat, Inc. v. Shannon*, No. 6:11-cv-00084-GAP-KRS, 2011 WL 6010441, at *6-9 (M.D. Fla. Nov. 30, 2011) (finding preamble did not end with the first use of "comprising"). None of the cases cited by defendants supports their position.[3]

Further, the fact that the preamble supplies an antecedent basis for other claim terms does not mean that the entire preamble is limiting. *See e.g., LBS Innovations LLC v. BP Am., LLC*, Nos. 2:11-cv-00407-JRG and 2:12-cv-00735-JRG, 2013 WL 3187167, at *56-58 (E.D. Tex. Jun. 19, 2013) (Gilstrap, J.) (finding preamble not limiting even where it provided antecedent basis for some claim terms); *RMail Ltd. v. Amazon.com, Inc.*, Nos. 2:10-CV-258-JRG, 2013 WL 968246, at *99-103 (E.D. Tex. Mar. 11, 2013) (Gilstrap, J.) (same).

Defendants' assertion that the preamble must be a limitation otherwise the claim would lack a medium that hosts the four types of channels described in the specification (*see* Def. Br. at 21-22) is also misplaced. Indeed, this Court previously found that the "[c]laim steps do not recite or rely on what particular medium is used to connect the controller and the terminals." *C-Cation v. Comcast*, D.I. 222 at 15.[4]

Moreover, with respect to "a shared transmission means for signalling data and user information," even if this term is found to be a claim limitation, defendants' proposed construction is improper and should be rejected. For example, if construed as a "means plus

---

[3] In *Vehicular Techs.*, the claim at issue included a four-word preamble where the fourth word was "comprising." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1379 1382-83 (Fed. Cir. 2000). And, in *Dow Chem.*, the claim contained three transitional phrases (two of which were "having"), and the preamble was found to end after the third. *See Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1368, 1380 (Fed. Cir. 2001).

[4] In rejecting the same argument being advanced by defendants here, the Court also stated that "[t]hough Defendants point to several citations to shared transmissions, the vast majority of the specification focuses on aspects of managing the signalling data channels." *Id.* at 16.

function" limitation, which it is not (*see* Op. Br. at 9),[5] defendants' construction fails to follow the basic tenets of construing such terms. Indeed, in proposing a function, defendants fail to point to any claim language that requires four types of channels. *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) (the function of a term construed under § 112 ¶ 6 is taken solely from the claim language). In any event, defendants are also incorrect that the specification requires four types of channels. *See* Op. Br. at n. 4.

### B. "Signalling Data Channel(s)" (claims 1, 3, and 4)

Defendants' assertion that their purposed construction of "signalling data channels" is the same as the Court's in *C-Cation v. Comcast* except for one "minor adjustment"—replacing "user traffic" with "user data"—is misleading. Their brief makes clear that this "minor adjustment" is simply a back door attempt to insert the term "user traffic" into the claims. *See* Def. Br. at 26-27. As the term "user traffic" does not appear in the claims, there is no need for the Court to further interpret its previous construction by inserting it now. *See E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1220 (Fed. Cir. 2007) ("[T]he terms courts use to enunciate the proper construction of a claim are not themselves limitations that require interpretation."); *Robocast, Inc., v. Microsoft Corp.*, 21 F. Supp. 3d 320, 327 (D. Del. 2014) ("The Court has no obligation to further construe its constructions, and declines to engage in such circular endeavors.").

Moreover, defendants' assertion that signalling data channels "***do not carry user traffic***" (*see* Def. Br. at 27, emphasis in original) is incorrect. This assertion appears to rest on the notion that the specification distinguishes "user data" from "user traffic."[6] But the specification does no

---

[5]  "Op. Br." refers to C-Cation's Opening Brief, filed as Docket Entry 80.

[6]  Defendants' brief also makes this incorrect assertion in arguing for their construction of "user information." *See* Def. Br. at 25-26. But there too, they fail to cite to any support in the specification for the notion that "user information," "user traffic," and "user data" are different. (continued…)

3

such thing. Indeed, the portions of the specification that defendants rely on merely distinguish **signalling data** on the one hand from **user data** or **user traffic** on the other. Def. Br. at 26 (citing col. 3:4-16, col. 5:15-26, col. 5:58-62, col. 13:59-63).

Thus, defendants' proposed modification is both unnecessary and unsupported.

### C. Channel Assignment

**"establishing communications between said central controller and said plurality of remote terminals" (claim 1, step (a))**

According to defendants, the dispute over this term relates to what type of information must be transmitted in order for "communications" to have been "established." Defendants' construction requires the system to be able to transmit user information—as opposed to signalling data—to consider communications to have been established. However, the claims are devoid of any mention of "user information." Claim 1 only requires that communications be established. This point in time happens at the beginning of the remote terminal registration process: when the remote terminal and the central controller first communicate.

Neither step (a), which concerns establishing communications, nor any other part of claim 1 limits the type of data that is transmitted or received over the channels. Indeed, the claim does not require that "user information" ever be communicated.[7] *See* Op. Br. at 15.

Moreover, defendants' construction is inconsistent with dependent claim 2, which further defines the process of "establishing communications." *See Phillips v. AWH Corp.,* 415 F.3d

---

To the contrary, the specification uses "information" "data" and "traffic" interchangeably to refer to the same thing. *See* col. 5:60 (referring to "signalling . . . traffic"), col. 13:8-9 (referring to "signalling information"), col. 17:12 (referring to "signalling data").

[7] Signalling data channels are only required to carry signalling data. *See* Op. Br. at 15-16. Defendants do not address how their construction can be reconciled with this fact.

4

1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he usage of a term in one claim can often illuminate the meaning of the same term in other claims."). Defendants do not—and cannot—dispute that the messages transmitted and received in dependent claim 2 are signalling data. That is, communication between the central controller and the remote terminals is established by transmitting only signalling data and there is no mention of transmitting any user information.

Claim 2 also shows why defendants' citations to the registration process are irrelevant. The steps of claim 2—which establish communications—are only a part of the registration process depicted in Figure 7. Specifically, nothing below the depicted "registration frame on RD-x" in Figure 7 is recited in claim 2. Defendants' construction of "establishing communications" is overly narrow and improperly restricts this term to a point in time when the central controller and remote terminals have been communicating signalling data for some time.

> D. **Monitoring, Determining Whether to Reassign, and Reassignment Steps Are Not Indefinite**
>
>> 1. **"monitoring the status of a plurality of the signalling data channels in use . . . for the usability of said signalling data channels" / "the usability of said signalling data channels" (claim 1, step (b))**

Defendants would have this Court ignore the context of the surrounding claim language and the patent as a whole and focus exclusively on one disembodied word to determine indefiniteness. They ask: "is the term 'usability' indefinite?" Def. Br. at 5. But this is not the proper question. Claim terms should not be construed in isolation. As with any term for construction, "usability" should be examined in context of the surrounding claim language. *See Phillips*, 415 F.3d at 1314 ("[T]he context in which a term is used in the asserted claim can be highly instructive."); *Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-CV-158-JRG, 2015 U.S. Dist. LEXIS 3384, at *50 (E.D. Tex. Jan 12, 2015) (Gilstrap, J.) ("Importantly, Defendant gives no effect to the surrounding claim limitations and instead attempts to construe the term in

5

isolation. In truth, the surrounding claim limitations provide specific guidance to this term as claimed . . . ."); *Cioffi v. Google Inc.*, No. 2:13-CV-103-JRG-RSP, 2014 U.S. Dist. LEXIS 123760, at *52-53 (E.D. Tex. Aug. 28, 2014) (Payne, M.J.) ("The surrounding claim language thus renders the scope of the disputed term 'reasonabl[y] certain [].'"); *Thomas Swan & Co. v. Finisar Corp.*, No. 2:13-cv-00178-JRG, 2014 WL 2885296, at *9 (E.D. Tex. Jun. 25, 2014) (Gilstrap, J.); *ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.*, No. 6:08-CV-325, 2009 U.S. Dist. LEXIS 110781, at *17-18 (E.D. Tex. Nov. 30, 2009).

When read in context, the meaning of the claim term is clear, and is not subjective.[8] It simply requires monitoring the communication channels for one or more parameters relating to usability: "monitoring the status of a plurality of the signalling data channels in use . . . for the usability of the signalling data channels." This information is used in "determining whether [a] . . . remote terminal needs to be reassigned" (step (c)) and, if so, in "determining whether a different and suitable . . . channel is available" (step (d)).

And, as discussed in C-Cation's opening brief, the intrinsic evidence identifies several exemplary parameters, the monitoring of any of which satisfies this element. *See* Op. Br. at 19-20. Such exemplary embodiments as provided in the patent are sufficient to avoid a finding of indefiniteness.[9] *See FlatWorld Interactives LLC v. Samsung Elecs. Co.*, C.A. No. 12-804-LPS,

---

[8]   Defendants' assertion of indefiniteness also relies heavily on *Interval Licensing*. *See, e.g.*, Def. Br. at 6, 7, 9, 13, 14, 18. But that case involved a term which, read in context, was found to be "purely subjective." *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014). As explained, such is not the case here.

[9]   Defendants argue that Dr. Heegard's testimony confirms that "usability," "need," and "suitability" are subjective and that they exemplify the "ridiculous extremes" that C-Cation's interpretations could be taken to. *See* Def. Br. at 9-10, 13, 16. But Dr. Heegard repeatedly testified in response to the outlandish scenarios posited by defendants that one of ordinary skill would not implement such foolish parameters. *See, e.g.*, Ex. 3 at 34:18-35:4; 38:22-39:2; 39:21-22; 40:14; 77:15-25; 83:22-84:11; 85:13-86:6; 91:2-8; 95:19-22; 96:9-20.

2014 U.S. Dist. LEXIS 178653, at *33-35 (D. Del. Dec. 31, 2014) (district court, citing *Nautilus*, found claim term "class" "sufficiently definite to guide those skilled in the art to its successful application, even though there may be an infinite number of classes that could be designed," and also that "listing every possible image class" is "not necessary") (internal citations omitted); *Invensys Sys. v. Emerson Elec. Co.*, Case No. 6:12-cv-799; 2014 WL 3884165, at *11 (E.D. Tex. Aug. 6, 2014) (Davis, J.) (finding the term "system disturbance" not indefinite where the patent provided several examples of "system disturbances").

Moreover, defendants' expert Dan Schonfeld concedes that persons of ordinary skill know that certain parameters relate to usability. For example, he declares that "latency" is "very important" in real-time video communications, and that "signal error" "may be essential" in communication systems such as document email transfer. *See* Op. Br., Ex. 4 at ¶ 32. There is nothing indefinite about monitoring such parameters.

### 2. "determining whether one of said plurality of remote terminals needs to be reassigned" / "needs to be reassigned" (claim 1(c))

Defendants' arguments concerning the "determining" step (c) of claim 1 are fatally flawed for the same reason as discussed with the "monitoring" step. Instead of using proper context, defendants focus on a single word "needs," and examine it outside the context of the claim language. As explained, this is improper. *See supra* at II.D.1.

The "determining" step (c), read in context, is not a matter of degree. *See* Op. Br. at 22. Rather, the step requires the existence of a threshold based, at least in part, on a parameter monitored in step (b). This is akin to a method claim for an alarm clock where an alarm must be set, but it is left to the user to determine the time of the alarm. While the particular time would vary among users, such a claim step does not lack reasonable certainty.

Defendants do not dispute that step (c) of claim 1 requires a threshold, but instead argue

7

that guidance is necessary to determine the specific value to set the threshold. *See, e.g.*, Def. Br. at 11. Neither the claim language nor the specification warrants such a narrow construction. Because the scope of step (c), in context, is clearly directed to the existence of a threshold based on a monitored parameter(s), examples of which are provided in the '883 patent, the terms in question are not indefinite. *See, e.g.*, *Flatworld*, 2014 U.S. Dist. LEXIS 178653, at *33-35.

> **3. "determining whether a different and suitable signalling data channel is available" (claim 1, step (d)) / "is available" (claim 1, step (d)) / "reassigning by said central controller said remote terminal to a different and suitable signalling data channel" (claim 1, step (e))**

In asserting that steps (d) and (e) are indefinite, defendants commit the same error as they did in analyzing steps (b) and (c); they focus on a single word in isolation instead of in proper context. *See* Def. Br. at 14-18. Here, defendants focus on the words "suitable" and "available" and argue that C-Cation has not pointed to any portions of the specification that provide what amounts to a bright line test for what is "suitable" and "available." But this argument misses the point and violates the claim construction procedure set forth in *Phillips*. *See supra* at II.D.1.

As explained in C-Cation's opening brief, when viewed in context, "suitable" is not a subjective term of degree that requires a precise numerical value. *See* Op. Br. at 24. The same is true for "available." The claim language is clear: "determining whether a different and suitable . . . channel is available." "Suitable" and "available" are not technical terms. Rather, they are common, everyday words and are being used in that way. Specifically, it is clear that "suitable" means fit for its intended use, or free from the reasons—or parameter(s)—that necessitated a reassignment. "Available" means—well, available; in existence.

If there was any doubt, which there is not, dependent claim 5 makes this clear as it teaches that a "suitable" channel can be a channel with spare capacity. Again, instead of addressing the proper context of the claim, defendants try to conflate the two terms and argue

8

that C-Cation's construction cannot possibly be correct because it lacks a bright line boundary. Such position lacks merit. *See, e.g.*, *Flatworld*, 2014 U.S. Dist. LEXIS 178653, at *33-35.

### 4. "said predetermined signalling data channel" (claim 1, step (c)) / "said predetermined channel" (claim 1, step (d))

While defendants acknowledge that the Court has already found that these terms are not indefinite, defendants argue that a change in the law necessitates a different result now. *See* Def. Br. at 18-19. The purported change in law, however, does not change the outcome.

Here, the Court correctly found that "other than said predetermined channel" refers to a channel other than one of the pair of channels already being used by the remote terminal:

> in the context of the claim language, it is clear that a determining step is being done with regard to a single channel, and that channel is one that is other than the earlier recited pair of predetermined signalling data channels.

*C-Cation v. Comcast*, D.I. 222 at 43. The Court further found that the specification supported C-Cation's position that one of the channels is being referenced. *See id.*

Defendants also argue that an example provided in MPEP § 2173.05(e) renders the term unclear. *See* Def. Br. at 18. However, that same section states that "[i]f the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite." Such is the case here, where the disputed terms clearly reference one of the "pair of predetermined signalling data channels" recited earlier in claim 1.[10] *See also*, *Nautilus, Inc. v. Biosig Instr., Inc.*, 134 S. Ct. 2120, 2129 (2014) ("the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter"). Defendants' indefiniteness arguments once again should be rejected.

---

[10] While C-Cation proposes to construe these terms as "one of the signalling data channels in use," it does not object to the Court's prior construction of "one of the pair of predetermined signalling data channels."

9

### E. Order of Claim Steps (claim 1)

Defendants' proposed construction requires that all steps of claim 1 be performed in the order in which they appear. However, in their brief, defendants only discuss the ordering of steps (a) and (b).[11] *See* Def. Br. at 29-30.

For steps (a) and (b), both the claim language and the specification show there is no required order. For example, nothing in step (a) requires that every remote terminal seek to join the network simultaneously or that no remote terminals are connected and operating before "communications are established" with the "plurality of remote terminals." It is entirely logical that remote terminals may be connected to a network that the central controller has been periodically monitoring, and that a plurality of additional remote terminals may seek to join the network at a later time.

The specification contemplates exactly this scenario. For example, in discussing Figure 6, the specification teaches that when a "newly registering terminal" seeks to join the system (col. 8:20-23), one of the factors that the central controller may check is "the number of remote terminals using the channel." Col. 8:35-37. Thus, the channel was being monitored prior to registering the new remote terminal. In addition, the specification also teaches that a remote terminal that was once part of the network could seek to rejoin it. *See id.* at col. 25-30.

Further, the specification teaches that the system is specifically designed for growth. *See* col. 3:35-38. Requiring the monitoring of step (b) to occur only after all remote terminals have joined the system makes no sense in view of the specification.

---

[11] Defendants appear to have dropped their "order" arguments for the other steps. *See SmartPhone Techs. LLC v. Research in Motion Corp.*, Nos. 6:10cv74 LED-JDL and 6:10cv580 LED-JDL, 2012 U.S. Dist. LEXIS 108369, at *79-80 (E.D. Tex. Aug. 2, 2012).

Dated: February 6, 2015 Respectfully submitted,

/s/ Sam Baxter
Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
MCKOOL SMITH, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

John F. Garvish, II
Texas State Bar No. 24043681
jgarvish@mckoolsmith.com
MCKOOL SMITH, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Lewis V. Popovski
Jeffrey S. Ginsberg
David J. Kaplan
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
Tel.: (212) 425-7200
Fax: (212) 425-5288
lpopovski@kenyon.com
jginsberg@kenyon.com
djkaplan@kenyon.com
*Attorneys for Plaintiff C-Cation Technologies, LLC*

11

## **CERTIFICATE OF SERVICE**

I certify that on February 6, 2015 all counsel of record were served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By: /s/ Sam Baxter